UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| Blakely | Civil Action No. 09-2037 |
| versus | Judge Tucker L. Melançon |
| CITGO Petroleum Corp. | Magistrate Judge C. Michael Hill |

**MEMORANDUM RULING**

Before the Court are cross motions for summary judgment filed by defendant, CITGO Petroleum Corporation ("CITGO") [Rec. Docs. 24; 25] and by plaintiff, Jimmy Blakely, [Rec. Docs. 32; 33]; plaintiff's oppositions [Rec. Docs. 30; 31] and defendant's replies [Rec. Docs. 38; 39]. For the reasons that follow, CITGO's motions will be granted.

*I. Background*

In this personal injury action, plaintiff Jimmie Blakely seeks tort remedies for an accident which occurred while he was employed by R&R Construction, Inc. ("R&R") at the CITGO Petroleum Corporation refinery ("the refinery"), located on the Calcasieu River and along Highway 108, just south of Sulphur, Louisiana, in Calcasieu Parish. The refinery uses crude oil to make gasoline, diesel, and other petrochemical products.

On or about June 19, 2006, an unexpected heavy rain event resulted in the release of waste water and oil into a secondary containment area from two tanks in the Waste Water Treatment Plant at CITGO's refinery ("WWTP"). The spill material released into the secondary containment area of the WWTP and eventually escaped into the Indian Marais and Calcasieu Estuary through a junction box that had been constructed by R&R Construction, Inc. Plaintiff, Jimmie Blakely, was employed by R&R as a multi-craft employee to work in the WWTP prior to and during the cleanup of the spill.

On June 19, 2009, R&R assigned plaintiff to work on a crew that was involved in cleaning up the spill. The cleanup of the spill lasted several weeks. Prior to and throughout the period of the spill cleanup, R&R was working for CITGO pursuant to a Master Service Agreement. Plaintiff alleges that during the time he was cleaning up the spill, he was exposed to "toxic and hazardous materials released by CITGO" resulting in his personal injuries and damages. *R. 1*.

Plaintiff filed a Petition in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana on August 6, 2009. *R. 1, Exhs. A, B*. In his Petition, plaintiff alleged that he suffered personal injury which was caused by his alleged exposure to chemicals during an oil spill from CITGO's Lake Charles Refinery in June 2006. *Id*. Plaintiff further alleged that CITGO is liable for his injuries under Louisiana Civil Code articles 667, 2298, and 2315. CITGO removed the action to this Court on August 19, 2009 asserting diversity jurisdiction under 28 U.S.C. § 1332. *Id*. On July 15, 2010, CITGO filed the motions before the Court, which are unopposed, asserting: (1) CITGO is entitled to a rebuttable presumption that it is plaintiff's statutory employer, and therefore immune from this tort action, [Rec. Doc. 24]; and, (2) plaintiff's claims against CITGO should be dismissed because plaintiff's alleged exposure to chemicals released from the refinery was not the cause of his alleged injuries [Rec. Doc. 25].

## II. Motion For Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party

seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[1] *Id.* at 322-23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light

---

[1] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.*

most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Analysis

CITGO filed two motions for summary judgment contending: (1) plaintiff's action must be dismissed under Louisiana tort law because he has no evidence which proves a causal relationship between his injuries and CITGO's alleged conduct; and (2) CITGO is entitled to a rebuttable presumption that it is the statutory employer of plaintiff and therefore is immune from this action in tort.  The Court will address the motions as follows:

#### 1.  Causation

Plaintiff alleges in his Petition that during clean-up of the spill, he was "exposed to and inhaled dangerous levels of the toxic and hazardous materials released by CITGO" and that "as a result of being exposed to and inhaling these chemical, he suffered personal injuries and damages."  *R. 1, ¶ 11.*  In particular, plaintiff contends in his opposition to CITGO's motion that he was exposed to "toxins" while assisting with the clean-up of the CITGO spill from June 20, 2006 through December, 2006.  He asserts that he was first given safety equipment that included rubber coveralls, boots, Nomex and a dust mask and that he was not given a respirator until 6 hours later.  *R. 31, Exh. I, 3/9/07 Dr. Arimura Question-naire, p. C2; Plaintiff's Depo., pp. 103-104.*  Plaintiff maintains his medical records establish that he "experienced significant exposure to crude oil and waste," and therefore, indicate a connection between the exposure and his injuries.  *R. 31.*  As a consequence of the "toxic exposure," he contends his physical injuries included "fatigue, fever, joint pain, insomnia, depression and irritability, dizziness, blurred vision, ringing in his left ear, sinus congestion, nose bleeds, sore throat, coughs, dyspnea or shortness of breath, vomiting, diarrhea, abdominal pain, tingling, and skin rashes [later diagnosed as urticaria]."  *R. 31, Exh. I,*

4.

*3/9/07 Dr. Arimura Questionnaire, p. C2-C7.* He further contends that as of March 9, 2007, his "fevers, dizziness, and dyspnea had continually worsened." *R. 31.*

CITGO argues that plaintiff has tendered no medical or causation expert and fails to point to any scientific evidence establishing that the materials in the CITGO oil spill were capable of causing plaintiff's alleged injuries or that plaintiff was exposed to levels of chemicals that actually caused him harm. CITGO further argues that plaintiff has misapplied the burden of proof in this case by suggesting that CITGO, rather than plaintiff must disprove causation. The Court agrees.

Plaintiff's claims against CITGO are brought pursuant to Louisiana state tort law, and therefore, the Court must apply Louisiana substantive law. *Stephens v. Witco Corp.*, 198 F.3d 539, 541 (5th Cir.1999). In a tort action for personal injury in Louisiana, a plaintiff must establish by a preponderance of the evidence that it is more probable than not that the personal injury of which he complains was caused by the defendant's conduct. *Maranto v. Goodyear Tire & Rubber Co.*, 650 So.2d 757, 759 (La.1995). In exposure cases, such as this one, it is clear that the causation element requires scientific evidence. In *Allen v. Pennsylvania Engineering Corp.*, the Fifth Circuit noted that "[s]cientific knowledge of the harmful level of exposure, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." 102 F.3d 194, 199 (5th Cir.1996), (citing *Wright v. Willamette Industries, Inc.*, 91 F.3d 1105, 1107 (8th Cir.1996)).[2] *Allen* involved the situation of whether the manufacture of ethylene oxide

---

[2] While deciding *Allen*, the Fifth Circuit cited *Wright v. Willamette Industries, Inc.* extensively. In *Wright,* the Eighth Circuit held that, under Arkansas law, plaintiffs had failed to produce evidence that they were exposed to harmful levels of formaldehyde in an exposure action. *Id.*, 91 F.3d 1105. In determining what a plaintiff must show to recover in a toxic exposure case, the *Wright* court held "At a minimum, we think that there must be evidence from which the fact-finder can conclude that the plaintiff was exposed to levels of that agent that are known to cause the kind of harm that the plaintiff claims to have suffered." *Id.*, at 1107. The court continued, "there must be evidence from which a reasonable person could conclude that a defendant's emission has probably caused a particular plaintiff the kind of harm of which he or she complains before there can be recovery." *Id.*
(continued...)

(EtO) should be liable to the estate of a hospital worker who had exposure to EtO. The Fifth Circuit found the scientific evidence lacking and therefore upheld the district court's refusal to allow certain expert testimony regarding the matter. *Id.*, at 198-199. The court noted that regulatory and advisory bodies make prophylactic rules governing human exposure based on proof that is reasonably lower than that appropriate in tort law, which "traditionally make[s] more particularized inquiries into cause and effect" and requires a plaintiff to prove "that it is more likely than not that another individual has caused him or her harm." *Id.* at 198, (citing *Wright v. Willamette Industries, Inc.*, 91 F.3d at 1105).

      Here, plaintiff has provided no evidence, scientific or otherwise, to establish either general or specific causation: (1) while plaintiff alleges that he was exposed to "toxins" in the oil, he makes no attempt to identify what these alleged toxins were or to quantify his level of exposure; (2) plaintiff offers neither expert testimony nor any scientific literature establishing that any as-yet-unidentified constituent of the oil was capable of causing the injuries he alleges; (3) plaintiff fails to cite to any health regulations or other standards that set forth minimum exposure thresholds capable of causing injury; and (4) plaintiff fails to offer any evidence that he was exposed to levels that would be capable of causing any injury. Moreover, the medical questionnaire prepared by Dr. Arimura,[3] which plaintiff contends establishes a connection between the exposure and his injuries, merely provides a summary of complaints and does not purport to offer a causal link between plaintiff's alleged exposure and his symptoms. *R. 31, Exh. I, 3/9/07 Dr. Arimura Questionnaire, p. C2-C7.* Plaintiff conceded in his deposition testimony that none of his physicians ever told him his alleged injuries were caused by the spill. *R. 31, Plaintiff's Depo., pp. 117-120.* Thus, as plaintiff

---

   [2](...continued)

   [3] CITGO notes that the medical questionnaire prepared by Dr. Arimura, submitted as Exhibit I to plaintiff's opposition, was interposed within certified records from Lake Charles Memorial Hospital. However, Dr. Arimura's questionnaire was not a part of the records certified by Lake Charles Memorial Hospital.

has come forth with nothing to establish that his complained of injuries were caused by an exposure to CITGO's spill, CITGO's motion for summary judgment as to causation must be granted.

### 2. *Statutory Employer*

CITGO also contends that it is entitled the statutory employer of plaintiff and is therefore immune from this action in tort. *R. 24.* Plaintiff opposes CITGO's motion and argues that the construction and environmental services performed by plaintiff fell outside the scope of the master services agreement between CITGO and R&R (the "MSA"). Plaintiff also contends that the work was not integral to CITGO's business because refineries are not in the "specialized" business of construction and cleanup. In support of his position, plaintiff cites *Kirkland v. Riverwood International USA, Inc*, 658 So.2d 715 (La. App. 2 Cir 6/21/95) and *Lemaire v. CIBA-GEIGY* Corp., 793 So. 2d 336 (La. App. 1st Cir. 2001), both of which alleged injuries that occurred before the 1997 amendment of Louisiana's statutory employer law, Louisiana Revised Statute 23:1031. "The 1997 amendments expressly overruled the statutory employer tests in *Kirkland* .... See 1997 La. Acts, No. 315, § 2.[4] Under the 1997 amendments, 'work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.' La.Rev.Stat. Ann. § 23:1061(A)(1). It is widely understood that the 1997 amendments 'specifically rejected' Kirkland's 'restrictive analysis' in favor of a more expansive interpretation of the words 'integral' and 'essential.' *Ramos v. Tulane Univ. of La.*, 951 So.2d 1267, 1270 (La.App. 4th Cir.2007); *see also Jackson v. St. Paul Ins. Co.*, 897 So.2d 684, 689 (La.App. 1st Cir.2004)." *Berthelot v. Murphy Oil, Inc.*, 2010 WL 103871, 4 (E.D.La.,2010) (J. Vance).

---

[4] Plaintiff did not cite the Louisiana Supreme Court's affirmation of the court of appeals judgment, *Kirkland v. Riverwood Intern. USA, Inc.*, 681 So.2d 329, 338 (La.,1996) nor did he indicate to the Court that *Kirkland* and *Lemaire* have been legislatively overruled.

The 1997 amendments also added an evidentiary presumption such that in cases in which a principal is undertaking to have work performed by a contractor, there is a 'rebuttable presumption' that a statutory employer relationship exists if there is a written contract 'between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer.' La.Rev.Stat. Ann. § 23:1061(A)(3). This presumption may be rebutted "only by showing that the work is not an integral part of or essential to the ability of the principal" to generate its "goods, products, or services." *Id*. Once the presumption arises, the burden of rebuttal shifts to the worker. *Berthelot* at 4-5 (citing *Everett v. Rubicon, Inc.*, 938 So.2d 1032, 1042 (La.App. 1st Cir.2006)).

Here, the work being performed by R&R for CITGO on June 19, 2006 was being done pursuant to a contract between R&R and CITGO ("MSA"). *R. 24*, *Exh. A, Aff. of Roy White; Exh. B, Aff. of Ronald H. Lovett*. Prior to the spill, R&R was working on various projects, including plaintiff's work on construction of a third waste water tank. *R.24, Exh. B; Exh. E, Aff. Of Steven S; R. 36, Exh. 1.* The MSA contained the following provision:

> IN ACCORDANCE WITH LOUISIANA LAW, and in consideration for work or service let or assigned to R&R Construction, Inc. ("CONTRACTOR'), CONTRACTOR hereby agrees that terms and conditions of the contract described by the CITGO Contract Number listed below and existing between CITGO Petroleum Corporation ("CITGO") and Contractor shall expressly include the following effective September 1, 1997:
>
>> Contractor agrees and recognizes that CITGO is the Statutory Employer of all Contractor personnel assigned to provide Services under the contract for services between CITGO and the Contractor in accordance with the requirements of Louisiana Revised Statutes R.S. 1061A(3).

Thus, the MSA is a written contract between CITGO, as the principal, and R&R, the contractor, wherein CITGO is recognized as the statutory employer of employees of R&R

8.

as required by Louisiana Revised Statute 23:1061. Under Louisiana Revised Statute 23:1061(A)(3), once it is determined that a written contract creates a statutory employer relationship, there is a rebuttable presumption that can only be overcome by plaintiff proving that the work he was performing at the time he sustained his injuries was not an integral part of or essential to CITGO's ability to generate its good, products, or services.  LSA-R.S. 23:1061(A)(3).

CITGO submits the July 15, 2010 Affidavit of Ray Hill, CITGO's Maintenance Manager. *R. 24, Exh. A, Aff. Of Ray Hill.*  Hill states that all of the work performed by R&R was performed pursuant to the MSA.  He further states that all activities performed by R&R at CITGO's refinery - pre-spill and post-spill - were necessary to allow the refinery to operate safely and in compliance with environmental laws.  More particularly, Hill represents that CITGO could not market refined products without access to its supply of seaborne crude oil, the essential raw material which was cut off from the refinery pending cleanup of the spill. Thus, Hill maintains, "the activities being performed by R&R, including plaintiff's work to contain and clean-up the spill,  are an integral part of and essential to the operation of the refinery and to CITGO's ability to generate its goods, products, and services."  *Id.*

The Louisiana Supreme Court has not yet addressed the effect of the 1997 amendment on the statutory employer standard. However, several appellate courts have addressed the amendment, finding that the amendment established a more liberal standard for statutory employer determination.  In *Everett v. Rubicon, Inc*., 938 So.2d 1032, 1040 (La.App. 1 Cir.,2006), the court addressed statutory employer under circumstances similar to this case.  There, the subcontractor's employee was injured while constructing a waste storage facility at a chemical plant.  *Id.* at 1041. The court found § 1061 to be applicable based upon deposition testimony of the maintenance manager at the chemical plant "that a

9.

properly supported amine brine receiver is necessary to collect and hold the waste chemicals generated in the production of MDI until they can be disposed of properly. Without such a receiver, the chemical plant would be unable to produce its chemicals safely or properly." *Id*.

In *Armond v. Marathon Oil Corp*., 2007 WL 934452, 3 (E.D.La.,2007) (J. Barbier), the plaintiff was completing work pursuant to a service contract between Marathon Oil and The Cajun Company, plaintiff's direct employer, that specified Marathon Oil as plaintiff's statutory employer. *Id*. When he was injured, plaintiff was working atop a storage tank used to store asphalt in a liquid state such that the asphalt would be marketable. *Id*. Plaintiff opposed the summary judgment motion arguing that such work was not "integral" to the defendant's ability to generate its product. *Id*. at *2. The court rejected that argument noting that Louisiana courts have adopted a liberal interpretation of what is integral to a business. *Id*. at *3 (citing *Everett v. Rubicon, Inc*., 938 So.2d 1032 (La.App. 1 Cir.,2006)).

Under the controlling legal precedent, the construction and environmental clean-up services provided by R&R are plainly an essential part of operating a refinery. CITGO has provided summary judgment evidence that establishes that the work plaintiff was performing on the date of the incident was an integral part of and essential to CITGO's ability to generate its products. *R. 24, Exh A, Aff. of Ray Hill*. Plaintiff has failed to rebut this presumption. Because there are no material facts in dispute and the law compels a conclusion that plaintiff was CITGO's statutory employee, summary judgment should be granted to CITGO.

### IV. Conclusion

As the Court finds that plaintiff failed to show a causal link between the CITGO spill and his alleged injuries, the Court need not consider CITGO's motion for summary judgment related to statutory employer. However, even assuming *arguendo* that plaintiff could prove

causation, CITGO is entitled to a rebuttable presumption that it was plaintiff's statutory employer. As plaintiff has failed to rebut this presumption, CITGO is immune from liability in this action. Accordingly, based on the record before the Court, as well as the applicable law and jurisprudence, CITGO's motions for summary judgment as to causation and as to statutory employer will be granted and plaintiff's action will be dismissed.